UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Patrick A. Carlone,                                    Civil No. 09-204 (JMR/FLN)

    Plaintiff,

v.                                                     **REPORT AND RECOMMENDATION**

International Association of Heat and Frost
Insulators and Allied Workers Local No. 34,

    Defendants.

_____

Eric P. Hockman, Thomas C. Kayser for Plaintiff.
Kelly A. Jeanetta for Defendants.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on June 16, 2009 on Defendants' Partial Motion to Dismiss [#10]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends Defendants' Motion to Dismiss [#10] be **GRANTED in part** and **DENIED in part**.

**I.    BACKGROUND**

Plaintiff Patrick A. Carlone was a member of the International Association of Heat and Frost Insulators and Allied Workers Local No. 34 until he was allegedly forced into retirement on or about November 1, 2008. (Compl. ¶ 44.) Carlone was particularly skilled in fabricating and installing industrial insulation. *Id.* at ¶ 9.

    **A.    The Union's Role in Securing Its Members Jobs**.

Plaintiff's Complaint states that Local 34 members may only seek employment with contractors who are parties to the Local Collective Bargaining Agreement and International

Agreement. *Id.* at ¶ 10. These contractors usually contact Local 34 for their manpower needs and, in turn, Local 34's Business Manager or Agent assigns Local 34 members to work on projects. *Id.* In some cases, Local 34 provides lists of workers for contractors in advance of their need for workers on a specific project. *Id.* at ¶ 11. Plaintiff alleges that he has been a member of Local 34 since 1956 and, until the incident giving rise to this lawsuit, he 1) had little trouble securing employment through the union and 2) only sought employment through Local 34. *Id.* at ¶ 12.

### B. Circumstances Giving Rise to this Lawsuit.

In July 2004, Carlone began working for a Flint Hills Resources contractor called Gagnon, Inc. ("Gagnon"). *Id.* at ¶ 13. He worked over 700 hours for Gagnon between July and December 2004. *Id.* at ¶ 14. In or about November 2004, Carlone told a Gagnon foreman that the sheet metal he was being asked to work on was too thick. *Id.* at ¶ 15. Carlone told the foreman that sheet metal of a certain thickness required the skill of a member of the sheet metal workers union and, that by working on thick metals, he was infringing on the sheet metal workers' trade. *Id.* at ¶¶ 14-15. Carlone alleges that, in retaliation for Carlone's complaint, the foreman moved him from the work he was doing and assigned him to perform work at high elevations. *Id.* at ¶ 16. Carlone alleges that due to his age, diabetes and asbestosis, it was difficult for him to climb ladders and stairs multiple times each day. *Id.* at ¶¶ 16-17. He alleges Gagnon knew that most of the work available for Carlone at the site did not require climbing ladders and stairs. *Id.* at ¶ 16.

Carlone alleges that on or about December 1, 2004 he collapsed and had "great difficulty returning to his feet." *Id.* at ¶ 17. On the same day, Carlone informed a Gagnon Site Superintendent that he needed a medical layoff. *Id.* at ¶ 18. Carlone alleges that the Employee Separation Statement specifically stated that he was eligible for rehire. *Id.* Carlone alleges that after he

collapsed, he was unable to walk for several days and feared his legs might have to be amputated. *Id.* at ¶ 19. Motivated by this fear, he wrote a letter to Flint Hills Resources "to advise it of his safety concerns for older employees working under the conditions that had so weakened him that he could not walk." *Id.* at ¶ 20. The letter was however returned to him undelivered. *Id.* at ¶ 21. Carlone alleges he also provided copies of the letter to Gagnon and Local 34 on or about December 6, 2004. *Id.*

On December 16, after Carlone had recovered, he called Gagnon and requested to return to work. *Id.* at ¶ 22. Gagnon told him to call back after January 1, 2005. *Id.* In early January, Carlone went to a doctor to obtain a release to end his medical layoff. *Id.* at ¶ 23. The release stated that Carlone could not work at elevations higher than ten feet. *Id.* at ¶ 24. On or about January 5, 2005, Carlone mailed Gagnon the medical release and a copy of the letter he had written to Flint Hills Resources. *Id.* at ¶ 25. Carlone alleges that in retaliation for the sending the letter to Flint Hills Resources, Gagnon placed him on a "not for hire" list. *Id.* at ¶ 27. He alleges that in or about January 2005, Gagnon informed Local 34 it had placed Carlone on a "not for hire" list but Local 34 did not inform Carlone and refused to take action in Carlone's defense. *Id.* at ¶ 29. Carlone alleges that he is still on Gagnon's "not for hire" list. *Id.* at ¶ 30.

Carlone alleges that between October 2005 and the present, Local 34 has referred other members of the union for employment, including local mechanics and out-of-state travelers, but has refused to refer Carlone for employment. *Id.* at ¶ 32. He alleges that he has tried to find employment with Local 34's signatory contractors on his own but has been unsuccessful. *Id.* at ¶ 35. Carlone alleges that he was placed on "not for hire" lists with all of Local 34's signatory contractors without his knowledge. *Id.* at ¶ 36.

3

Carlone claims that beginning in October 2005, Local 34 represented to him that no work was available. *Id.* at ¶ 37. Unable to pay his union dues while unemployed, Carlone submitted his union withdrawal card on or about November 2006. *Id.* at ¶ 38.

Carlone alleges that in April of 2007, he attended a Local 34 meeting where Keith Chrisopherson, the union's business agent, stated that Gagnon, as well as other signatory contractors, were hiring union members. *Id.* at ¶ 39. Carlone alleges that after attending this meeting, he sought reinstatement as a member of Local 34 and took out a mortgage on his home to pay over $2,000 in back-dues. *Id.* at ¶ 40. He alleges that because he could not find work through Local 34 after being reinstated, his home was foreclosed upon because he could not make the payments. *Id.* Carlone alleges it was not until May 2007 that he learned from Keith Christopherson he had been placed on Gagnon and other contractors' "not for hire" lists. *Id.* at ¶ 41.

Carlone alleges that Local 34 had knowledge at all material times he had diabetes, asbestosis, and was 69 years of age or older. *Id.* at ¶ 31. Carlone alleges Local 34 knew, at all relevant times, he was on signatory contractors' "not for hire" lists and failed to assist him in removing his name from those lists or otherwise assisting him in finding employment. *Id.* at ¶ 42. He further alleges that Local 34 caused his name to be placed on the signatory contractors' "not for hire" lists. *Id.* at ¶ 43.

Carlone alleges that on or about October 21, 2008, he was forced to request a retirement withdrawal card from Local 34 because he could not afford the union dues without a job. *Id.* at ¶ 44. He claims that he was however willing and able to work at the time he was allegedly forced to withdraw. *Id.*

In his Amended Complaint, Carlone alleges the following claims: Employment

4

Discrimination Because of Age (Count I), Employment Discrimination Because of Disability (Count II), Tortious Interference with Prospective Contractual Relations (Count III), Breach of Written Contract (Count IV) and Breach of Fair Duty of Representation (Count V). In this motion, Defendants move to dismiss Counts III, IV and V.

## II. STANDARD OF REVIEW

In analyzing the adequacy of a complaint under Rule 12(b)(6), the Court must construe the complaint liberally and afford the plaintiff all reasonable inferences to be drawn from those facts. *See Turner v. Holbrook*, 278 F.3d 754, 757 (8th Cir. 2002). For the purpose of a motion to dismiss, facts in the complaint are assumed to be true. *In re Navarre Corp. Sec. Litig.*, 299 F.3d 735, 738 (8th Cir.2002).

Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity. *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions. *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir.1998). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (U.S. 2007).

Ordinarily, the court does not consider materials outside the pleadings on a motion to dismiss. Indeed, when the parties submit materials outside the pleadings and the court does not exclude them, the court generally treats the motion to dismiss as one for summary judgment. *See*

Fed. R. Civ. P. 12(d). However, without treating the motion as one for summary judgment, the court may consider: (1) materials outside the pleadings that are necessarily embraced by the pleadings; and (2) exhibits attached to the complaint. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). In evaluating this motion, the Court relies on two publications outside the pleadings that are necessarily embraced by Plaintiff's Amended Complaint – the Constitution and Bylaws of the International Association of Heat & Frost Insulators & Asbestos Workers (Affidavit of Kelly A. Jeanetta Ex. A.) and the Bylaws of International Association of Heat and Frost Workers Local No. 34. (Affidavit of Eric P. Hockman Ex. A.) In Count IV of his Amended Complaint, Plaintiff alleges Defendants violated the Union's Constitution and Bylaws.

### III. LEGAL ANALYSIS

#### A. The Tortious Interference with Prospective Contractual Relations Claim (Count III) Must be Dismissed Because it is Preempted by Federal Law.

The Defendants contend that the tortious interference with prospective contractual relations claim should be dismissed because it is preempted by the National Labor Relations Act under the Supreme Court's holding in *San Diego Building Trades Council, Mailmen's Local 2020 v. Garmon*, 359 U.S. 236 (1959) and its progeny.

State and federal courts must dismiss a claim against a union where the alleged wrongful activity of the union is, at least, arguably forbidden under Section 7 or 8 of the National Labor Relations Act (the "NLRA") and therefore must be brought before the National Labor Relations Board. *Id.* at 245; *Local 100 of the United Association of Journeymen and Apprentices v. Borden*, 373 U.S. 690, 694 (1963). In other words, state and federal courts lack jurisdiction where "the conduct called into question may reasonably be asserted to be subject to Labor Board cognizance." *Borden*, 373 U.S. at 694.

Defendants contend that the conduct alleged by Plaintiff has arguably violated §§ 8(b)(1) and 8(b)(2) of the NLRA.[1] Plaintiff alleges that he complained to a Gagnon foreman that he was infringing on the sheet metal workers' trade by working on sheet metal that was over a certain thickness. He alleges that in retaliation for making the complaint, the foreman assigned Carlone to do work at high elevations that was difficult for him to perform given his health condition. After collapsing while performing this work at high elevations, Plaintiff wrote a letter to Flint Hills Resources expressing his concern for the safety conditions for older workers at its plant. Sometime after Gagnon received a copy of the letter, it placed Plaintiff on its "not-for-hire" list. Plaintiff alleges that Gagnon informed Local 34 that it had placed Plaintiff on its "not for hire" list and that Local 34 then "induced or otherwise caused its [remaining] signatory contractors to place and/or maintain Carlone on 'not for hire' lists." (Compl. ¶ 43.)

The alleged conduct is arguably covered by Section 8(b)(1)(A). That section provides that it is an unfair labor practice for a labor organization to "restrain or coerce employees in the exercise of the rights guaranteed by section 157 of this title . . ." Section 157 provides in part that employees have the right to "assist" labor organizations and have the right "to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." It is at least

---

[1] Section 8(b)(1) and (2) provide: "It shall be an unfair labor practice for a labor organization or its agents - -
    (1) to restrain or coerce (A) employees in the exercise for the rights guaranteed in section 157 of this title . . . ; or (B) an employer in the selection of his representatives for the purposes of collective bargaining or the adjustment of grievances;
    (2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) of this section or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership. "

arguable that the Local 34 made efforts to place Carlone on its contractors' "not for hire list" in retaliation for his complaints that he was infringing on the sheet metal workers' trade. In lodging his complaint, Carlone was arguably "assisting" a labor organization, namely his own Local 34 and the sheet metal workers' union by ensuring that members of each union were engaging in the proper kind of work. It is also arguable that he was engaging in "concerted activity" for the "protection" of a labor organization. Therefore, Local 34 was arguably engaging in an unfair labor practice by allegedly working to have Carlone placed on "not for hire" lists because such retaliation could be characterized as an attempt to "restrain or coerce employees" in the exercise of their section 157 rights. Plaintiff's claim is therefore arguably covered by the FLRA and his claim is preempted by the statute.

### B. Defendants are Not Entitled to Dismissal of Plaintiff's Breach of Contract Claim (Count IV).

Defendants contend Plaintiff's breach of contract claim should be dismissed because Plaintiff has failed to exhaust his internal union remedies.

"[C]ourts have discretion to decide whether to require exhaustion of internal union procedures." *Clayton v. Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am.*, 451 U.S. 679, 689 (1981). *See also Beyene v. Coleman Sec. Svcs, Inc.*, 854 F.2d 1179, 1183 (9th Cir. 1988) (holding that the union has the burden of "establishing the availability of adequate internal union remedies"). One relevant factor in exercising this discretion is "whether the internal union appeals procedures would be so inadequate either to reactivate the employee's grievance or to award him the full relief he seeks . . ." *Id.* In this case, there were no grievance procedures in place at the local level. (*See* Hockman Aff. Ex. A (Local 34's Bylaws).) At the hearing, Defendants admitted that no local procedures were in place for filing a grievance with Local 34.

However, Defendants contend adequate internal union remedies exist because the International Association provides a procedure to *appeal* local union actions. Article XIX, Section 24 of the International Constitution, titled "Local Unions," provides that "[a]ny member who takes issue with any action of a local union, may, after exhausting all local union bylaws or constitutional provisions in an effort to obtain redress, appeal to the General Executive Board in writing . . ." Defendants essentially contend that Plaintiff and other Local 34 members should be able to infer from the above section of the International Constitution that, in fact, there are no local union procedures and therefore grievances should be taken directly to the International Union. The International Association's appeals process infers that, at the local level, there is a procedure for resolving disputes between the union and its members.

Because there was no forum at the local level for a member to file a grievance and no clear direction that should a member have a grievance, he or she must take it up directly with the International Union, the Court concludes that Defendants' procedures were inadequate to award Plaintiff the full relief he seeks under § 301. Plaintiff was therefore not required to exhaust the internal union appeal procedure.

### C. Plaintiff's Breach of Duty of Fair Representation Claim (Count V) Must be Dismissed Because the Statute of Limitations Has Expired.

Defendants contend that Plaintiff's Breach of Fair Duty of Representation Claim must be dismissed because the six month statute of limitations has run on the claim. Plaintiff, on the other hand, contends that the correct statute of limitations is not six months but rather six years and therefore the claim has not expired.

### 1. The Six-Month Statute of Limitations from § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), Applies Here.

Typically, breach of duty of fair representation claims such as the one in this case are accompanied by a claim against the plaintiff's employer for breach of the collective bargaining agreement. The Supreme Court held in *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151 (1983), that an employee's "hybrid claim" against his employer for breach of a collective bargaining agreement and his union for breach of fair duty of representation was subject to the six-month statute of limitations borrowed from § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). The Court "borrowed" the statute of limitations from § 10(b) because, as is typical with federal civil law, there was no federal statute of limitations that applied to the suit. *Id.* at 158. As a general rule, where there is no applicable federal statute of limitations that applies to a claim, courts borrow the statute of limitation from the most closely analogous state statute. *Id.* In *DelCostello*, however, the Court concluded that the most analogous statute was not a state statute but rather the National Labor Relations Act, and applied the NLRA six-month statute of limitations to the hybrid claim. *Id.*

Neither the Supreme Court nor the Eighth Circuit Court of Appeals has addressed whether the six-month statute of limitations also applies to a claim brought against only the union for breach of fair duty of representation, as the case is here, and does not include a breach of the collective bargaining agreement claim. The Defendants contend that the six-month statute of limitations from § 10(b) of the NLRA still applies, citing to *Erkins v. United Steelworkers of America*, 723 F.2d 837 (11th Cir. 1984). Plaintiff, on the other hand, contends that because his claim is not a "hybrid" claim, *DelCostello* is inapplicable. Plaintiff contends *DelCostello* does not disrupt the Supreme Court's holding that the most closely analogous state statute supplies the period of limitations for federal causes of action when federal legislation has been silent on the question. *Int'l Union, United*

*Auto., Aero. & Agric. Implement Workers of America v. Hoosier Cardinal Corp.* 383 U.S. 703, 704 (1966). Plaintiff therefore contends that the six-year statute of limitations for liability created under Minnesota statue should apply here.[2] *See* Minn. Stat. § 541.05(2).

Plaintiff also directs the Court to the Eight Circuit's holding in *International Brotherhood of Teamsters v. Kansas City Piggy Back*, for the proposition that the six-year statute of limitations should apply. 88 F.3d 659 (8th Cir. 1996). In *Piggy Back*, the union brought suit against an employer to enforce an arbitration agreement. *Id.* at 660. The employer claimed that, as in *DelCostello*, the court should borrow the six-month statute of limitations from § 10(b) of the NLRA for the claim and that the claim had expired. *Id.* The court concluded that the five-year statute of limitations for Missouri contract claims applied to the union's cause of action, reasoning that *DelCostello* may impact other claims brought under Section 301[3], but that the union's action to enforce an arbitration award entered pursuant to an arbitration clause is governed by the state statute of limitations. *Piggy Back's* narrow holding addressing only causes of action brought by a union to enforce an arbitration award is inapplicable to this case.

The Court concludes that the six-month statute of limitations applies to Plaintiff's claim. In *DelCostello*, the Supreme Court reasoned that "when a rule from elsewhere in federal law clearly provides a closer analogy than available statute statutes, and when the federal policies at stake and

---

[2] Plaintiff argues that the six-year statute of limitations should apply not only to Count VI but also to Counts III and IV. Because Defendants do not challenge Counts III and IV on statute of limitations grounds, the Court does not address Plaintiff's argument as it relates to Counts III and IV.

[3] Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, provides, *inter alia*, that unions are entities that may be sued and suits against unions may be brought in federal district court.

the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking, we have not hesitated to turn away from state law." 462 U.S. at 172. In *Erkins*, the Eleventh Circuit Court of Appeals concluded that the six-month statute of limitations from § 10(b) of the NLRA applied to a claim by an employee against the union for breach of duty of fair representation that was not accompanied by a claim against his employer for breach of the collective bargaining agreement (i.e., a non-hybrid claim). The court reasoned that the six-month statute of limitations was appropriate because the Supreme Court in *DelCostello* indicated that a breach of a union's fair duty of representation "either was an unfair labor practice or so closely resembled an unfair labor practice as to require use of the six-month statute [of limitations]." *Id.* at 838. It further noted that in *DelCostello*, the Supreme Court reasoned that "[t]he addition of the fair representation element [in a hybrid claim] requires application of § 10(b) because 'the unfair representation claim made by an employee against his union . . . is more a creature of "labor law" as it has developed . . .than it is of general contract law." *Id.* at 839.

### 2. The Statute of Limitations Has Run on Plaintiff's Claim.

A claim for breach of duty of fair representation accrues "when the employee knows or reasonably should know that the union has breached its duty of fair representation." *Skyberg v. United Food and Comm. Workers Intern. Union*, AFL-CIO 5 F.3d 297, 301 (8th Cir. 1993). Carlone alleges he discovered Defendants' misconduct in May 2007. (Compl. ¶ 41.) He did not, however, file this lawsuit until January 29, 2009, long after the six-month statute of limitations had expired. Plaintiff's breach of fair duty of representation claim must be dismissed.

## IV. RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY**

**RECOMMENDED** that Defendants' Motion to Dismiss [#10] be **GRANTED in part** and **DENIED in part**, as follows:

1. To the extent that Defendants seek to dismiss Count III, the Motion must be **GRANTED.**

2. To the extent Defendants seek to dismiss Count IV, the Motion must be **DENIED**.

3. To the extent Defendants seek to dismiss Count V, the Motion must be **GRANTED**.


DATED: August 21, 2009               *s/ Franklin L. Noel*
                                     FRANKLIN L. NOEL
                                     United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **September 8, 2009**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **September 8, 2009,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.