```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF MINNESOTA
                  09-CV-204 (JMR/FLN)
```

| | |
|---|---|
| Patrick A. Carlone | ) |
| | ) |
| v. | ) |
| | )   ORDER |
| International Association of | ) |
| Heat and Frost Insulators and | ) |
| Allied Workers Local Union | ) |
| No. 34 | ) |

Plaintiff, Patrick A. Carlone, a Union member, claims he is in a dispute with defendant, his Union. Defendant moves to dismiss claiming plaintiff's Second Amended Complaint is time-barred and fails to state a claim upon which relief can be granted. The motion to dismiss is granted.

I. <u>Background</u>[1]

The Second Amended Complaint states plaintiff has been a Union member since 1956. In that capacity, he installed industrial and commercial insulation. In November, 2004, plaintiff worked for Gagnon, Inc., a contractor bound by a trade agreement with the Union at a site owned by Flint Hills Resources. Carlone complained to his foreman of being asked to work with sheet metal that was too thick, and which, in Carlone's view, should have been given to a member of a sheet metal worker's union. As a result of this

---

[1] The allegations of the Second Amended Complaint are taken as true for purposes of this motion. <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009). The Court also refers to allegations from the First Amended Complaint [Docket No. 6], some of which are not stated in the Second Amended Complaint.

complaint, Carlone claims the foreman retaliated by giving him jobs requiring difficult climbing. Carlone claims the climbing led to medical problems, causing him to leave the job on December 1, 2004.

Shortly thereafter, Carlone wrote a letter to Flint Hills Resources, and sent a copy to Gagnon and the Union. The letter warned of a safety risk to older employees on their job site. Carlone alleges that in retaliation for writing the letters, Gagnon placed him on a "not for hire" list, and told the Union about it. The Union did not notify plaintiff about being placed on the list.

Carlone recovered from his medical difficulty and wished to return to work. In early 2005, he asked the Union to speak to Gagnon on his behalf. The Union refused, and neither investigated Carlone's claims nor filed a grievance on his behalf. Meanwhile, however, the Union continued to refer other members for work at Gagnon.

At some point between 2004 and 2007, Nyco, Inc., another Flint Hills contractor, also put Carlone on a "not for hire" list. Again, the Union was aware of this, but took no steps to file a grievance against Nyco. The Union did, however, continue to refer other members to Nyco for employment.

In May, 2007, Carlone discovered he had been placed on the "not for hire" lists. He filed a discrimination charge against the Union on June 23, 2007. The U.S. Equal Employment Opportunity Commission found probable cause, and issued a right to sue letter

on December 31, 2008.

Carlone filed his pro se complaint in this Court on January 29, 2009. On February 12, 2009, the Honorable Franklin L. Noel, United States Magistrate Judge, referred the case to the Volunteer Lawyers Network to see if a lawyer could be found to represent Carlone. After obtaining pro bono counsel,[2] Carlone filed a First Amended Complaint on March 18, 2009.

The First Amended Complaint alleged the Union engaged in age and disability discrimination, tortious interference with prospective contractual relations, breach of contract, and breach of the duty of fair representation. [Docket No. 6.] The Union brought a motion to dismiss several counts of the First Amended Complaint, which motion was referred to Judge Noel for Report & Recommendation. On August 25, 2009, Judge Noel recommended dismissal of Carlone's claims of tortious interference and breach of the duty of fair representation. This Court adopted the Report & Recommendation on September 9, 2009. In December, 2009, plaintiff voluntarily dismissed his age and disability discrimination claims, leaving only the breach of contract claim.

---

[2] At the time this motion was briefed and argued, plaintiff was capably represented by volunteer attorneys from the law firm of Robins, Kaplan, Miller & Ciresi. However, the attorney-client relationship was stormy, and the firm moved the Court to withdraw from representation after it defended Carlone on the motion to dismiss. After the conclusion of oral argument, the Court granted the motion [Docket No. 81]. As of March 9, 2010, plaintiff appears pro se.

On December 21, 2009, plaintiff filed his Second Amended Complaint alleging only the breach of contract claim.

Defendant now moves to dismiss the Second Amended Complaint, arguing it does not allege a breach of contract claim, but is, instead, properly considered a claim for breach of the duty of fair representation, and as such, is time-barred.

II. <u>Analysis</u>

Carlone's final remaining claim alleges the Union is liable for breaching its bylaws and constitution. Because defendants did not move to dismiss this claim in the original complaint, Carlone argues they have waived their right to seek dismissal now pursuant to Rule 12 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").

The Court finds no waiver. Plaintiff's Second Amended Complaint alleges materially different facts from both the First Amended Complaint and his initial pro se pleadings. Defendant answers, and the Court agrees, the presently-asserted basis for dismissal could not have been discerned until it was filed in December, 2009. The Court has no hesitation in granting defendant leave to make a motion addressed to the new complaint. <u>See</u> Rule 1, Fed. R. Civ. P.

The Court, then, turns to the substantive motion. To survive a motion to dismiss, a complaint must contain sufficient facts - accepted as true - to state a claim to relief "plausible on its

4

face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). A "plausible" claim contains facts from which the Court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Where the facts alleged in the complaint are "merely consistent with" liability, the claim is not plausible. Id.

In assessing whether a claim is plausible, the Court takes as true the factual allegations in the complaint. Id. However, the Court is not "bound to accept as true a legal conclusion couched as a factual allegation." Id.; Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007).

A time-barred claim is not facially plausible. Here, the Court must determine the appropriate statute of limitations. Plaintiff urges the Court to apply Minnesota's six-year breach of contract statute of limitations, see Minn. Stat. § 541.05 (2008). Were the Court to do so, plaintiff's claim is timely.

The Union disagrees, arguing plaintiff's claim is not what it appears to be. The Union claims plaintiff's asserted contractual breach is a ruse, designed to disguise his true claim that the Union has breached its duty of fair representation. Such a claim is governed by the Labor-Management Relations Act, which does not contain its own statute of limitations. As a result, federal courts borrow the most analogous state statute, unless doing so would frustrate underlying federal policies. DelCostello v. Int'l

5

B'hd of Teamsters, 462 U.S. 151, 158, 161 (1983). If the Union is correct, the claim is time-barred because fair representation claims borrow a six month federal statute of limitations. See DelCostello, 462 U.S. at 169.

The Court finds the Union is correct. Given a fair reading, plaintiff's claimed violations of the Union's bylaws and constitution are simply designed to avoid his real claim the Union's breach of duty of fair representation. As such, the complaint is untimely. See Conley v. Int'l B'hd of Electrical Workers, 810 F.2d 913, 915 (9th Cir. 1987) (because "essence" of the complaint "is that the union failed to act fairly" on plaintiff's behalf, breach of contract claim is subject to six-month limitations period); see also Legutko v. Local 816, Int'l B'hd of Teamsters, 853 F.2d 1046, 1051 (2d Cir. 1988). The question is not the action's title, but "whether the suit implicates those consensual processes that federal labor law is chiefly designed to promote - the formation of the trade agreement and the private settlement of disputes under it." Legutko, 853 F.2d at 1051 (internal quotations omitted).

The Labor-Management Relations Act confers upon unions the exclusive authority to represent their members in disputes with employers; their concomitant duty is to do so fairly. See DelCostello, 462 U.S. at 165, n. 14. The Union's duty of fair representation encompasses handling employee grievances. See id.

at 168. The Supreme Court has noted that "grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government," and as such, "could become unworkable" if decisions could be challenged or reversed years after the fact. Id. at 168-69. Accordingly, the Supreme Court has held a six month limitations period is appropriate. Id. at 169.

Here, Carlone alleges he was placed on two "not for hire" lists without cause - the first time in late 2004 or early 2005, and the second in 2007. Carlone disputed the employers' actions, and claims the Union failed to investigate or intercede with the employers on his behalf. According to Carlone, the Union should have investigated his claims and pursued a trade dispute or grievance. Such acts fall squarely within the Union's duty of fair representation. See DelCostello, 462 U.S. at 154 (mishandling of grievance); Cantrell v. Int'l B'hd of Elec. Workers, 32 F.3d 465, 467 (10th Cir. 1994) (failure to process grievance).

Carlone had a dispute with his employer. He faults the Union for failing to help him resolve it. Because his claims directly implicate dispute settlement under the trade agreement, they are not purely internal union matters. The cases cited by plaintiff do not involve employer disputes, making them clearly distinguishable. Contrast Reed v. United Transp. Union, 488 U.S. 319, 321-22 (1989) (union member criticized leadership; union allegedly retaliated by delaying member's claims for reimbursement); Bullock v. Dressel,

435 F.3d 294, 300-01 (3d Cir. 2006) (members who criticized business manager were not referred for work from hiring hall); Brenner v. United B'hd of Carpenters & Joiners, 927 F.2d 1283, 1295 (3d Cir. 1991) (members who opposed business agent's candidates for union office were not referred for work from hiring hall); Hechler v. Int'l B'hd of Elec. Workers, 834 F.2d 942, 946 (11th Cir. 1987) (member claims union breached collective bargaining agreement by failing to train her).

Although cast as a claim for breach of contract, the Court finds these facts, if proven, actually allege a breach of the duty of fair representation. This claim should have been commenced within six months of its accrual, but it was not. Therefore, the claim is time barred.

Even if the Court considered Carlone's allegations as a breach of contract, this claim would still fail for failure to allege facts showing a "plausible" entitlement to relief.

Section 301 of the Labor-Management Relations Act gives federal courts subject matter jurisdiction over a union member's claim that the union local has breached its own constitution. See Wooddell v. Int'l B'hd of Elec. Workers, 502 U.S. 93, 100 (1991); 29 U.S.C. § 185. Such jurisdiction exists when the complaint alleges a violation of a contract between two labor organizations; that is, between a local union the international union of which it is a part. Id. at 98 n. 3. The Constitution and Bylaws of the

International Association of Heat & Frost Insulators and Asbestos Workers is such a contract; accordingly, the Court could have jurisdiction over an action for its breach.[3]

To recover for breach of contract[4] under Minnesota law,[5] a plaintiff must prove (1) a valid contract was formed; (2) plaintiff performed any conditions precedent to his right to demand performance by the defendant; and (3) the defendant breached the contract. Indus. Rubber Applicators, Inc. v. Eaton Metal Prods. Co., 171 N.W.2d 728, 730-31 (Minn. 1969), overruled on other grounds in Standslast v. Reid, 231 N.W.2d 98, 103 (Minn. 1975). There is no dispute Carlone has pleaded the first two elements sufficiently to satisfy the requirements of Twombly and Iqbal; the question is whether he has sufficiently alleged the Union's breach.

To assess plaintiff's allegations, the Court must consider the

---

[3] Neither the Supreme Court nor the Eighth Circuit Court of Appeals has had the opportunity to consider the proper limitations period for Wooddell claims. However, the Ninth Circuit, the only Circuit to address the question to date, holds Wooddell claims are subject to DelCostello's six-month limitations period. See Moore v. Local Union 569 of the Int'l B'hd of Elec. Workers, 989 F.2d 1534, 1542 (9th Cir. 1993).

[4] For the nonce, and strictly for purposes of this analysis, the Court sets aside the very likely prospect that, even if considered as a union-member/union contract dispute, this dispute, too, is barred by the DelCostello six-month statute of limitations.

[5] It is not altogether clear that Minnesota law would apply in such a case. The Court has found no law clarifying the question. But, as this case involves Minnesota parties - even if a Union is an unincorporated entity recognized under federal law - the Court assumes, without deciding, it falls under Minnesota's contract law.

9

contract terms.  It must then attempt to interpret the contract, first to discern, and second, to effectuate the parties' intention, "considering the agreement as a whole and the plain meaning of the language used, viewed in the light of the surrounding circumstances."  Midway Center Assoc. v. Midway Center, Inc., 237 N.W.2d 76, 78 (Minn. 1975).  "Where contractual provisions are susceptible of variant interpretations and in no way dependent upon a resolution of controverted extrinsic evidence, the issue is one of law for the court to resolve."  Id.

Here, Carlone alleges, at paragraph 59 of his Second Amended Complaint, that the Union bylaws and constitution required its officials to treat him "without prejudice or partiality" (Article XX, Section 8); to investigate his complaint against employers Gagnon and Nyco (Article XXI, Section 10); and "to take whatever steps are necessary on particular jobs to acquire and protect the work of our trade and its members." (Article XXI, Section 10).  The preamble to the bylaws, which Carlone also alleges has been breached, states in relevant part that the Union's "objects . . . shall be to defend by all legal and honorable means the rights of its membership, to advance their interests as workers, [and] to develop opportunities for employment in the trade."

The Second Amended Complaint claims the Union breached these terms by "refusing and/or failing to defend" his "rights as a member by all legal and honorable means, to advance his interests

as a worker, and to develop opportunities for his employment in the trade." More specifically, Carlone alleges the Union is in breach for "refusing and/or failing to investigate Carlone's complaints against Gagnon;" by "refusing and/or failing to challenge Carlone's placement on do not hire lists maintained by some or all of its signatory contractors;" by "treating Carlone with prejudice and partiality in failing to defend him against Gagnon, Nyco, and any other signatory contractors that placed Carlone on do not hire lists;" and by "refusing and/or failing to refer Carlone to its signatory contractors at relevant times when such signatory contractors requested manpower or otherwise notified Local 34 of open positions." (Second Am. Compl. ¶¶ 61-65.)

The Court holds as a matter of law these allegations fail to plausibly allege breach. The "mere possibility of misconduct" is not sufficient to raise a plausible claim. Iqbal, 129 S.Ct. at 1950. These contractual bylaws create no specific duty to perform the very acts plaintiff alleges did not occur. Further, the bylaws do not require the Union to challenge a member's placement on a "not for hire" list, or to file a grievance on any member's behalf. They do not require the Union to continue to refer a member for work at an employer who has placed him on a "not for hire" list. Plaintiff does not suggest the Union investigated or grieved the placement of other members on a "not for hire" list, or that it referred to work other members on a "not for hire" list.

11

Plaintiff does not claim he was treated differently from any other member who was placed on a "not for hire" list; nor does he allege that an employer requested him specifically and the Union refused to send him. Although Union officials may not act with "prejudice or partiality," the allegations are equally consistent with innocent conduct; for example, the Union's decision to advance the interests of the trade as a whole. Therefore, they do not state a plausible claim.

The Union's bylaws require Union business agents to investigate claims. Plaintiff claims there was no investigation. On its face, this might appear to allege a breach. But the Court concludes more is required to satisfy <u>Twombly</u> and <u>Iqbal</u>. By way of example, the Union's bylaws and constitution do not specify any event triggering the Union's duty to investigate. While the Second Amended Complaint alleges Carlone asked the Union's business agent to "speak to" someone at Gagnon, nowhere does he claim he asked the Union to investigate anything, let alone why he was placed on a "not for hire" list.

Even if the Union had investigated or initiated a conversation with employers who placed him on the "not for hire" lists, Carlone makes no showing that such an act would have resulted in a job with either employer. This makes for a most problematic question of damages.

The Court finds, in light of <u>Twombly</u> and <u>Iqbal</u>, that Carlone

12

has failed to allege conduct which is more than merely consistent with the Union's liability. Under those cases, he is required to show facts supporting an inference that the Union first is actually in breach, and second, can be legally liable for that breach. Because the terms of the bylaws, and the obligations they create, are vague, and because Carlone has failed to allege facts showing he requested the assistance he now claims the Union failed to provide, the Second Amended Complaint fails to allege facts supporting such an inference.

The Court finds this matter is time-barred because, however artfully-styled, the claim actually alleges a breach of the duty of fair representation. Even considered as a breach of contract, and even if conceivably timely, the claim is not plausible, and must be dismissed.

III. Conclusion

For the foregoing reasons, the Court grants defendant's motion to dismiss.

Plaintiff filed a number of motions and other filings pro se prior to his counsel's withdrawal [Docket Nos. 58-74]. On May 24, 2010, Carlone filed three additional pro se motions [Docket Nos. 83-85]. The Court has reviewed these filings and finds they do not provide any reason to deny the motion to dismiss. Accordingly, the pro se motions [Docket Nos. 58-61, 63-73, 83-85] are denied as moot.

IT IS SO ORDERED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: May 28, 2010

s/ James M. Rosenbaum  
JAMES M. ROSENBAUM  
United States District Judge